UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANET HELFRICH, individually, and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>RAVEN3 HOME BUYERS LLC, a New York company,<br><br>              Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Janet Helfrich ("Plaintiff Helfrich" or "Helfrich") brings this Class Action Complaint and Demand for Jury Trial against Defendant Raven3 Home Buyers LLC ("Defendant" or "Raven3") to stop Raven3 from violating the Telephone Consumer Protection Act by making pre-recorded and other telemarketing calls to consumers *without their consent*, including pre-recorded telemarketing calls to consumers. Plaintiff Helfrich, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Janet Helfrich is a resident of Valley Cottage, New York.

2. Defendant Raven3 is a New York registered company headquartered in White Plains, New York.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District, and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or pre-recorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

7. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

8. While "prior express consent" is required for all pre-recorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver pre-recorded messages by or on behalf of a specific seller; and (2)

Case 7:22-cv-03529-PMH   Document 1   Filed 05/02/22   Page 3 of 14

having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

9.  "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

10. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

11. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

12. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

13. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in November 2021 alone, at a rate of 137.4 million calls per day. www.robocallindex.com (last visited December 23, 2021).

3

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17. Raven3 provides real estate services to consumers.[3]

18. In order to generate sales and generate consumer leads for its salespeople, Raven3 places telemarketing calls, cold calling, including calls that use pre-recorded voice messages.

19. As per Plaintiff's experience, Raven3 placed calls with pre-recorded voice mails to her cell phone despite having been told to stop calling Plaintiff's cell phone, on multiple occasions.

20. Multiple consumers have posted complaints about similar calls they received from the Defendant just as the calls received by the Plaintiff, including complaints regarding calls from the same phone number 914-685-6554, from which the Defendant called the Plaintiff:

- "Somehow found my unlisted and out of state cell phone number and proceeded to harass me on multiple occasions via text message about selling my home. I told them multiple times that I am not interested, yet they continued to contact me, even after my home was listed on the MLS. This is not only annoying, but it is unethical as I am in a contract with another realtor. It's to the point where I fear for the safety of my home because it seems they want it so badly (and probably at bottom dollar) that they will stop at nothing (except offering market rate for a fully renovated

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://raven3.com/about/

house with an incredible view) to get it for less than it's worth. These guys don't care about you. They care about money no matter how they get it. Stay far away. "[4]

- "This guy calls me sometimes 5x a day despite me telling him to stop. Got my number from property tax records." [5]
- "Recorded message in regarding a real estate scam." [6]
- "AJ won't stop calling- wahat a racket; started on home number-NOMOROBO does not block AJ the relentless caller, now he's moved onto cell phones." [7]
- "Constant annoying spam calls" [8]
- "Called him back several times to ask him to stop calling me. It has not worked. I will be calling the FCC tomorrow" [9]
- "AJ left me a voice mail. NO PHONE CALL. This guy is phishing for business to rip you off. Don't return his call." [10]
- "AJ looking to buy my property Cold call unsolicited" [11]
- "It's from AJ who is looking to buy my property. It's an unwanted, cold call." [12]
- "Robocall from AJ. One of many he has placed to my cell phone." [13]

---

[4] https://www.google.com/search?rlz=1C5CHFA_enIN944IN944&q=Raven3+Home+Buyers&ludocid=13052744944828992040&gsas=1&lsig=AB86z5XcPghu1GcWScLi4l6mQ_ud&sa=X&ved=2ahUKEwjq_b7tx_r0AhU1DjQIHX9hDlgQoAJ6BAgQEAg&biw=1440&bih=821&dpr=2#lrd=0x89c2bfc7abe5f7cb:0xb524aa5ef44eca28,1,,,

[5] https://lookup.robokiller.com/p/914-685-6554

[6] https://lookup.robokiller.com/p/914-685-6554

[7] *Id.*

[8] https://findwhocallsyou.com/9146856554?CallerInfo

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

5

- [14]

21. Multiple consumers have also posted complaints about pre-recorded calls received from or on behalf of the Defendant, using the phone number 914-685-6554, the same phone number from which Plaintiff Helfrich was called, using similar pre-recorded messages as the ones received by the Plaintiff. For instance:

- [15]

---

[14] https://www.reportedcalls.com/9146856554
[15] https://directory.youmail.com/directory/phone/9146856554

6



Hey, this is E J this message is only if you are considering selling your property. If you are not you can hang up right now and disregard this message. If you are looking just to see what your home might be worth or just for an offer give us a call back we would love to help 914-685-6554 again. It's 914-685-6554. Hope you're doing well. Look forward to hearing back from you thank you.

Hey, Jay, I'm sorry, if we already spoke and you are not looking to sell your property this message is to anyone. I might be looking just for an offer even consider selling their properties. Please give me a call back if you are considering or like an offer 91468565549146856554 have a great new year and thank you so much bye bye.

Hi, how you doing this is E J Tom, you're probably tired of hearing from me. I completely understand that if you are still looking to sell your property. This is for you we'd love to get you an offer we're looking to buy another property in the area. Please give me a call back my phone number is 91468565549146856554 and if not again, I'm so sorry to bother you thank you bye.

[16]

Hey, this is E J this message is only if you are considering selling your property. If you are not you can hang up right now and disregard this message. If you are looking just to see what your home might be worth or just for an offer give us a call back we would love to help 914-685-6554 again. It's 914-685-6554. Hope you're doing well. Look forward to hearing back from you thank you.

Hey this is AJ how you doing. I was calling about your property. I just wanted to follow up and see if you were looking for an offer. If not I'm so sorry to bother you. If you are considering an offer or thought about it please feel free to reach out. We get free offers and we're here to help. My personal number is 914-685-6554 914-685-6554. Thank you so much and I look forward to speaking with you. Thank you.

[17]

---

[16] https://directory.youmail.com/directory/phone/9146856554
[17] https://directory.youmail.com/directory/phone/9146856554



---

[18] https://directory.youmail.com/directory/phone/9146856554
[19] https://directory.youmail.com/directory/phone/9146856554

## PLAINTIFF HELFRICH'S ALLEGATIONS

22. In or around August 2021, Plaintiff started receiving unwanted calls to her cell phone from Defendant's employee AJ regarding offers to buy her home.

23. Sometime in early August 2021, Plaintiff spoke to the Defendant's salesperson a few times, and requested him to stop calling her cell phone.

24. On August 16 or 17, 2021, Plaintiff received a call to her cell phone from the Defendant using the phone number 914-685-6554. Plaintiff did not answer the call. Plaintiff received a pre-recorded voice mail from Defendant's employee AJ to her cell phone.

25. On September 30, 2021, at 11:04 AM, Plaintiff received a call from the Defendant using the same phone number 914-485-9554. Plaintiff did not answer this call. The Plaintiff received another pre-recorded voice mail from Defendant's employee AJ to her cell phone.

26. On calling this phone number 914-685-6554, it is answered by one of Defendant's employees.

27. On February 22, 2022, at 5:16 PM, Plaintiff received another call to her cell phone from the Defendant. Plaintiff did not answer this call and received the same pre-recorded voicemail, as before, from Defendant's employee AJ offering to buy the Plaintiff's house.

> February 22, 2022
>
> ☎ Restricted                       5:16 PM

28. The unauthorized prerecorded solicitation telephone calls that Plaintiff Helfrich received from the Defendant, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her cell phone, in

addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

29. Additionally, Plaintiff is charged for each call and voicemail to her cell phone, so she has been incurring costs for answering these unwanted calls made to her by the Defendant.

30. Seeking redress for these injuries, Plaintiff Helfrich, on behalf of herself and Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded and other telemarketing calls to cellular telephones.

## CLASS ALLEGATIONS

31. Plaintiff Helfrich brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called on their cellular telephone number (2) using a pre-recorded voice message, (3) for the same purpose that Plaintiff was called.

32. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Helfrich anticipates the need to amend the Class definitions following appropriate discovery.

33. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

34.  **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Helfrich and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)  whether Defendant placed pre-recorded voice message calls to Plaintiff Helfrich and members of the Pre-recorded Class;

(b)  whether Defendant's calls to Plaintiff and other consumers were made without the requisite level of consent;

(c)  whether the calls constitute a violation of the TCPA; and

(e)  whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

35.  **Adequate Representation**: Plaintiff Helfrich will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Helfrich has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Helfrich and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Helfrich nor her counsel have any interest adverse to the Class.

36.  **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as

a whole, not on facts or law applicable only to Plaintiff Helfrich. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Helfrich and the Pre-recorded No Consent Class)

37. Plaintiff Helfrich repeats and realleges paragraphs 1 through 36 of this Complaint and incorporates them by reference.

38. Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Helfrich and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

39. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff Helfrich and the other members of the Pre-recorded No Consent Class.

40. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Helfrich and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Helfrich individually and on behalf of the Class, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Helfrich as the representative of the Class; and appointing her attorneys as Class Counsel;

b. An award of actual and/or statutory damages and costs;

c. An order declaring that Defendant's actions, as set out above, violate the TCPA;

d. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Helfrich requests a jury trial.

Respectfully Submitted,

**JANET HELFRICH**, individually and on behalf of those similarly situated individuals,

DATED this 2nd day of May, 2022.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

13

*Pro Hac Vice motion forthcoming*